UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GENPHARM, INC.,

Plaintiff,

v.

PLIVA-LACHEMA a.s. and PLIVA d.d.,

Defendants.

Case No. 03 CV 2835 (ADS)

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

**OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.**
**Attorneys for Defendants**
**230 Park Avenue**
**New York, New York 10169**
**(212) 661-9100**

TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..... 1

Introduction ..... 1

The Amended Complaint ..... 2

Lack of Subject Matter Jurisdiction ..... 4

Dismissal for Forum Non Conveniens ..... 8

ARGUMENT ..... 11

POINT I

THE COMPLAINT MUST BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION ..... 11

POINT II

ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED ON THE GROUNDS OF FORUM NON CONVENIENS ..... 14

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page(s)

Cases

Alnwick v. European Micro Holdings, Inc., 281 F.Supp.2d 629 (E.D.N.Y. 2003) ....................14, 15, 16

Amco Ukreservice & Prompriladamco v. American Meter Co., 2004 U.S. Dist. LEXIS 5301 (E.D. Pa. 2004) ....................8, 12, 13

Calgarth Investments, Ltd. v. Bank Saderat Iran, 1996 U.S. Dist. LEXIS 5562 (S.D.N.Y. Apr. 26, 1996), affirmed without published opinion, 108 F.3d 329 (2d Cir. 1997)....................15

Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG, 335 F.3d 52 (2d Cir. 2003)....................11

Carey v. Bayerische Hypo-Und Vereinsbank AG, 2004 U.S. App. LEXIS 10634 (2d Cir. June 1, 2004)....................11, 15

Chateau des Charmes Wines Ltd. v. Sabate USA, Inc., 2003 U.S. Dist. LEXIS 20337 (N.D. Cal. Nov. 12, 2003)....................10, 11, 15, 16

Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc., 201 F.Supp.2d 236 (S.D.N.Y. 2002)....................3

Helen Kaminski PTY., Ltd. v. Marketing Australian Prods., 1997 U.S. Dist. LEXIS 10630 (S.D.N.Y. 1997)....................8, 12, 13

Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001)....................14

Long Island Ambulance, Inc. v. Thompson, 220 F. Supp.2d 150 (E.D.N.Y. 2002) ....................11

Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127 (2d Cir. 1987)....................3

Viva Vino Import Corp. v. Farnese Vini S.r.l., 2000 U.S. Dist. LEXIS 12347 (E.D. Pa. 2000) ....................8, 12, 13

Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247 (2d Cir. 2000)....................3

Treatises and Statutes

15 U.S.C. App., Art. 1(1) ........ *passim*
15 U.S.C. App., Art. 14(1) ........ 4
28 U.S.C. § 1331 ........ 2, 5, 6
28 U.S.C. § 1332 ........ 2

Rules

Fed.R.Civ.P. 12(b)(1) ........ 1
Fed.R.Civ.P. 12(h)(3) ........ 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x
GENPHARM, INC., : Case No. 03 CV 2835 (ADS)

Plaintiff, :

v. :

PLIVA-LACHEMA a.s. :
and PLIVA d.d.,
:
Defendants.
:
---------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

**PRELIMINARY STATEMENT**

Introduction

Defendants Pliva-Lachema a.s. ("Pliva-Lachema"), a Czech corporation and Pliva-Lachema's Croatian corporate parent, Pliva d.d. ("Pliva") (collectively, "Defendants"), submit this Memorandum of Law, together with the accompanying Declaration of Tomas Topinka, in support of their motion to dismiss the Amended Complaint, dated December 15, 2003 (the "Amended Complaint", Exhibit "A" to the Declaration of Topinka) of plaintiff Genpharm, Inc. ("Genpharm" or "Plaintiff")), a corporation organized under the laws of, and principally located in, Ontario, Canada. This action should be dismissed pursuant to Fed.R.Civ.P.12(b)(1) for lack of subject matter jurisdiction and, in the alternative, on the grounds of *forum non conveniens*. There is, presently sub judice, Defendants' motion to dismiss this action for lack of personal

jurisdiction over these foreign defendants. Thus, this motion presents additional grounds for dismissal of this action.

In its original Complaint, dated June 6, 2003, Genpharm alleged that the subject matter jurisdiction of this Court over this action was solely predicated upon diversity jurisdiction, 28 U.S.C. § 1332. Amended Complaint, ¶ 21. By motion dated October 9, 2003, Defendants moved to dismiss that original Complaint on the grounds, among others, of lack of subject matter and personal jurisdiction.

In their initial motion to dismiss, Defendants contended that the Court lacked diversity jurisdiction because all of the parties were organized and principally located under the laws of foreign countries, and an action wholly between foreign entities fell outside the jurisdictional matrix contained in 28 U.S.C. § 1332. Confronted with this jurisdictional deficiency, Plaintiff served an Amended Complaint, and dropped its allegation of diversity jurisdiction. Instead, Plaintiff cited the United Nations Convention on Contracts for the International Sale of Goods (1980) (the "CISG", Exhibit "1" hereto) and invoked 28 U.S.C. § 1331, federal question jurisdiction, as the jurisdictional predicate of its Complaint. Examination of the contract document that constitutes the foundation of Plaintiff's claims reveals that it does not involve the "international sale of goods." Accordingly, the CISG is not applicable, and therefore there is no federal question giving rise to the jurisdiction of this Court.

The Amended Complaint

The Amended Complaint asserts claims for "breach of contract and damages", seeks legal, equitable and declaratory relief, and alleges that the action arose out of Defendants' purported breach of a "Manufacturer Agreement between the parties", pursuant to which Defendants allegedly "agreed to manufacture and supply Genpharm with the active

pharmaceutical ingredient ('API') used in the production of generic warfarin sodium tablets ('warfarin')", an anti-coagulant. Amended Complaint, ¶ 1. See, Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc., 201 F.Supp.2d 236, 244-45 (S.D.N.Y. 2002) for a discussion of the production and uses of warfarin.

In reality, the Manufacturer Agreement (Exhibit "E" to the Topinka Declaration) simply provided that Pliva-Lachema is an "approved manufacturer".[1] The Manufacturer Agreement contains no provision for the sale of goods and merchandise, and lacks any terms referring to price or quantity. There is only one agreement between Genpharm and defendant Pliva-Lachema. That document, signed on February 13, 2001 on behalf of Pliva-Lachema a.s. (Czech Republic) by its Quality Manager, is denominated a "Manufacturer Agreement" and provides:

"As an approved MANUFACTURER TO Genpharm you are asked to:

1) Confirm receipt of the above specifications and test methods,
2) Review and comment on the specifications and provide feedback to Genpharm
3) Genpharm to be notified in a timely fashion if there are any changes to
    a) the manufacturing processes,
    b) the sources of any intermediates used in the manufacturing of the raw material,
    c) the manufacturing equipment,
    d) and manufacturing site.

Written approval must be obtained from Genpharm prior to implementation."

---

[1] "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing. *See Cargill Int'l*, 991 F.2d at 101." Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000). "Motions to dismiss for forum non conveniens may be decided on the basis of affidavits. *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir.) (*en banc*), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980)." Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127, 130 (2d Cir. 1987).

There are no operative terms to that single one-page agreement. The attachments to that document are "Specifications & Certificates of Analysis" of the subject product. The Manufacturer Agreement notes that the "Distributor" is "Aliapharm GMBH Frankfurt" ("Aliapharm").

In May, 2004, Defendants substituted their counsel of record. Defendants now move for dismissal of the Complaint for lack of subject matter jurisdiction and on the grounds of *forum non conveniens*, and as already noted, this motion is in addition to the outstanding motion to dismiss for lack of personal jurisdiction which, since February 20, 2004, has been fully briefed and submitted, and remains *sub judice*.

Lack of Subject Matter Jurisdiction

Under well-established principles of constitutional law and the provisions of Fed. R.Civ.P.12(h)(3), a motion to dismiss for lack of subject matter jurisdiction may be brought at any time. Here, it has become apparent that subject matter jurisdiction is lacking because the dispute that underlies this lawsuit is outside the scope of the CISG, and no alternative basis for jurisdiction exists. By its very terms, the CISG applies to "contracts of sale of goods between parties whose places of business are in different States." 15 U.S.C.App., Art. 1(1). Further, under Article 14(1) of the CISG, a contract governed by the CISG must contain definite terms of price and quantity: "A proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes or makes provision for determining the quantity and the price." 15 U.S.C.App., Art. 14(1).

The Manufacturer Agreement is not a contract for the sale of goods, and lacks critical terms regarding price and quantity. This Manufacturer Agreement, which is the subject of Count I of the Complaint, simply provides for the designation by Genpharm of the Pliva-Lachema

manufacturing facility as an approved location, and is devoid of any references to the sale of goods, price or quantity. Thus, this "contract" is outside the scope of the CISG, and does not furnish a basis for jurisdiction under § 1331. Accordingly, there is no subject matter jurisdiction for the first cause of action asserted in the Complaint, alleging a breach of the Manufacturer Agreement.

The second cause of action asserted in the Complaint is for a breach of a "Distributor Agreement." The Distributor Agreement is described in paragraph 51 of the Complaint, and was allegedly entered into "on or about February 20, 2001" by Genpharm with Aliapharm, which is described in the amended complaint as Defendants' "distributor, agent and representative." Pliva-Lachema is not a signatory to the Distributor Agreement. The "Distributor Agreement" (Exhibit "F" to the Topinka Declaration) is substantially identical to the Manufacturer Agreement and provides:

> "The attached specification and IN-HOUSE test methods will be forwarded IMMEDIATELY to the approved manufacturer for their review and confirmation of their ability to comply to the established specifications. A copy of their receipt and acknowledgement will be kept on file.
>
> Genpharm is to be notified in a timely fashion if there are any changes to
>
> a) the manufacturing processes,
> b) the sources of any intermediates used in the manufacturing of the raw material,
> c) the manufacturing equipment,
> d) and manufacturing site.
>
> Written approval must be obtained from Genpharm prior to implementation."

The Distributor Agreement was signed on February 20, 2001 by an Aliapharm "sales manager." The Distributor Agreement is not a contract for the sale of goods, and lacks critical terms regarding price and quantity. This document is likewise outside of the scope of the CISG

and furnishes no basis for jurisdiction under § 1331. Further, examination of information issued by Aliapharm reflects that Aliapharm was founded in Frankfurt, Germany in 1992 to cover "the German market with pharmaceutical ingredients (API), pharmaceuticals in final forms, fine chemicals and intermediates (IM) produced in the Czech Republic, in the Slovak Republic, Germany and Italy" (Exhibit "K" to the Topinka Declaration). The owner of Aliapharm is "Alia Chem Verwaltung GMBH-Frankfurt." According to its promotional material, Aliapharm represents a number of chemical companies. The Defendants do not own or control Aliapharm . (Exhibit "K" to the Topinka Declaration)

The documented fact is that there is an agreement, dated April 29, 2001, dealing with the potential sale by Pliva-Lachema of the "Warfurin Sodium Clarathrat Product". The Complaint does not refer to that document, obviously, because disputes thereunder are arbitrable. That contract is between Pliva-Lachema and Aliapharm ("Pliva-Lachema/Aliapharm Sales Contract", Exhibits "G"-"I" to the Topinka Declaration). It prohibits Pliva-Lachema from selling to enumerated Aliapharm clients in specified territories, including a prohibition against sales to Genpharm. Genpharm is part of the Merck Generics Group, and the prohibition against Pliva-Lachemat also extends to sales to Merck Generics, a British company. The Pliva-Lachema/Aliapharm Sales Contract contains various terms regarding potential sales over a five-year period, and a requirement that counterparts of the contract be executed in Czech and in German, with the Czech version to prevail, in the event of a dispute regarding construction of the language.

The Pliva-Lachema/Aliapharm Sales Contract provided also that "any disagreements or disputes" in connection with the contract should be resolved as follows:

"9. SETTLEMENT OF DISPUTES

> Insofar as any type of misunderstanding or dispute arises in connection with this Contract, the contracting parties are required to meet in good faith with the goal of reaching a settlement in an amicable manner. Eventual disputes shall be resolved in a binding manner in an arbitration proceeding at the Court of Arbitration of the Chamber of Commerce of the Czech Republic and the Chamber of Agrarian Affairs of the Czech Republic."

Thus, not only is there no agreement for the sale of goods from Pliva-Lachema to Genpharm, a necessary prerequisite for subject matter jurisdiction, but the Pliva-Lachema/Aliapharm Sales Contract prohibits any such direct sale, and requires arbitration in the Czech Republic to resolve any controversy. Further, section 10.4 of the Pliva-Lachema/Aliapharm Sales Contract provides: "This Contract, as well as the legal relations between the contracting parties which are expressly unregulated by this Contract, are to be pursuant to the legal system of the Czech Republic . . . ." Additionally, Article 10 of Annex No.1 to the Pliva-Lachema/Aliapharm Sales Contract directed that the "present Contract of Purchase as well as any and legal consequences arising out thereof and related herewith, including matters pertaining to the validity and consequences of its invalidity, shall be governed by the legislation of the Czech Republic." Clearly, there is no basis for Genpharm to maintain this action in the United States District Court for the Eastern District of New York.

Likewise, the "DMF Letter of Access" dated November 19, 1999 (Exhibit "D" to the Topinka Declaration), which is the focus of Count III of the Complaint, does not provide the basis for subject matter jurisdiction. Clearly, that letter from Lachema to the U.S. Food and Drug Administration, is not a contract for sale. It is devoid of terms pertaining to quantity or price. The letter simply provides for access by the FDA to Pliva-Lachema's manufacturing facility.

As made clear by the holdings in Amco Ukrservice & Prompriladamco v. American Meter Co., 2004 U.S. Dist. LEXIS 5301 (E.D. Pa. 2004), Viva Vino Import Corp. v. Farnese Vini S.r.l., 2000 U.S. Dist. LEXIS 12347 (E.D. Pa. 2000), and Helen Kaminski PTY. Ltd. v. Marketing Australian Prods., 1997 U.S. Dist. LEXIS 10630 (S.D.N.Y. 1997), the CISG does not cover the breach of global agreements such as distribution agreement or manufacturer agreements, in and of themselves. "[A]lthough the CISG may have governed discrete contracts for the sale of goods that the parties had entered pursuant to . . . joint venture agreements, it does not apply to the agreements themselves." Amco Ukrservice, 2004 U.S. Dist. LEXIS 5301 at *13. Accordingly, this action should be dismissed for lack of subject matter jurisdiction.

Dismissal for *Forum Non Conveniens*

Alternatively, were this Court to determine that it possessed subject matter jurisdiction, this Court should nonetheless dismiss this action on the grounds of *forum non conveniens*. Dismissal on the grounds of *forum non conveniens* is particularly warranted in this case because all of the parties to this action are foreign corporations, each of the parties' principal place of business is located abroad, and the home country of each of the parties is a signatory to the CISG. Moreover, the events, contracts, and discussions that underlie this action all took place abroad, and all of the relevant witnesses and documents are similarly located abroad. This Court has no interest in retaining this action.

As established by the exhibits attached to the Topinka Declaration, the following parties and individuals were involved or claimed to be involved in this transaction:

Pliva, a publicly owned company organized and existing under the laws of Croatia, whose shares are publicly traded on the Zagreb and London Stock Exchanges, with its principal office in Zagreb, Croatia;

Pliva-Lachema is a company organized and existing under the laws of the Czech Republic with its principal office in Brno, Czech Republic and is ultimately owned by Pliva;

Merck Generics Ltd., a corporation organized and existing under the laws of the United Kingdom with its principal office in Hertfordshire, England, and a member of the Merck Generics Group;

Merck KGaA, a partnership organized and existing under the laws of Germany, with its principal office in Darmstadt, Germany and a member of the Merck Generics Group;

Genpharm, a corporation organized and existing under the laws of Ontario, with its principal office in Etobicoke, Ontario, Canada;

Aliapharm, a German corporation with its principal office in Frankfurt, Germany.

ATYPO, s.r.o., a Czech Republic corporation with its principal office in Prague, Czech Republic, a company allegedly associated with Aliapharm.

There were two significant conferences between the parties in connection with this controversy. The persons who participated in the conferences are as follows:

Conference on April 11, 2002 at the offices of Pliva-Lachema in Brno, Czech Republic was attended by:

Pliva by (all of whom are employed in Zagreb, Croatia) --

Zoran Buncic - Director, Fine Chemicals Division
Robert Frankovic - Director Technical Operations - Fine Chemicals Division
Neda Ortner - Assistant to Director of Quality Assurance

Pliva-Lachema by (all of whom are employed in Brno, Czech Republic) --

Vladimir Kysilka - General Manager - Currently Head of Intellectual Property
Marie Pracharova - Director of Fine Chemical Division
Sanja Peterlic - Quality Assurance Director

Merck Generics Ltd (UK) by (employed in Hertfordshire, England) --

Graham Swift - Principal API Coordinator

Aliapharm by (all of whom are believed to based in Frankfurt, Germany) --

Martin Sopuch - Registered Agent
A. Bergmann - Sales Manager

Conference on December 17, 2002 in Darmstadt, Germany, the location of Merck KGaA. Present at that conference were the following:

Pliva by --

Zoran Buncic - Director, Fine Chemicals Division
Vesna Vasiljevic - General Counsel

Plivia-Lachema by --

Marie Pracharova - Director of Fine Chemical Division
Renata Vinklerova - Legal Counsel

Merck KGaA (Germany) by --

Jurgen Freund - Purchasing Director
Philipp R. Buhler - Legal Counsel

Merck Generics Ltd (UK) by --

Graham Swift - Principal API Coordinator

Each of the nine (9) participants at the April 11, 2002 meeting and each of the seven (7) participants at the December 17, 2002 meeting are residents of various European countries, i.e., Croatia, Czeck Republic, Germany or the United Kingdom. Thus, every potential witness that had involvement in the transactions described in the Complaint is located in either Croatia, Czech Republic, United Kingdom, Germany or Ontario, Canada. Moreover, the documents make it clear that there is no basis for the maintenance of this action in this Court. Accordingly, this Court is not a proper forum for the resolution of this controversy.

In this vein, we respectfully call the attention of the Court to the holding of Chateau des Charmes Wines Ltd. v. Sabate USA, Inc., 2003 U.S. Dist. LEXIS 20337 (N.D. Cal. Nov. 12,

2003), where the Court dismissed an action brought pursuant to the CISG on *forum non conveniens* grounds. There, the plaintiff was Canadian and the defendants were American and French, respectively. Here, by contrast, all of the parties before the Court are foreign corporations. As such, the holding of Chateau des Charmes applies here with even greater force. See, Carey v. Bayerische Hypo-Und Vereinsbank AG, 2004 U.S. App. LEXIS 10634 (2d Cir. June 1, 2004) (*forum non conveniens* dismissal affirmed even where American plaintiff had commenced action because transaction was centered in Germany).

## ARGUMENT

## POINT I

## THE COMPLAINT MUST BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION

In this action in which all parties before this Court are corporations organized under the laws of foreign countries, and likewise headquartered abroad, Plaintiff cannot simply point to the CISG and blithely invoke the subject matter jurisdiction of this Court. "Rather, the plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova*, 201 F.3d at 113 (*citing Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996))." Long Island Ambulance, Inc. v. Thompson, 220 F.Supp.2d 150, 159 (E.D.N.Y. 2002) (Spatt, U.S.D.J.).

Plaintiff cannot meet that burden because Plaintiff's claims fall outside of the CISG, and without a grant of federal question jurisdiction, Plaintiff has no other jurisdictional avenue for appearing before this Court. "[D]isputes between corporations organized in foreign countries do not meet the requirements of diversity jurisdiction." Canada Life Assurance Co. v. Converium, 335 F.2d 52, 54 (2d Cir. 2003).

"The CISG is an international agreement that applies to sales of goods between parties in signatory nations, unless the parties expressly contract to be bound by another source of law. *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027-28 n.1 (2d Cir. 1995)." Helen Kaminski PTY. Ltd. v. Marketing Australian Prods., 1997 U.S. Dist. LEXIS 10630 (S.D.N.Y. 1997) at *6. (Thus, it is noteworthy that the sole relevant agreement for the sale of warfarin requires the application of Czech law and arbitration in a Czech forum). Further, by its terms, the CISG "applies to contracts of sale of goods between parties whose places of business are in different States: (a) when the States are Contracting States . . ." 15 U.S.C.App., Art. 1(1)(a). However, the "CISG does not define what constitutes a contract for the sale of goods. *See* CISG art. 2, *reprinted in* 15 U.S.C.A. App., at 335 (West 1998)." Amco Ukrservice & Prompriladamco v. American Meter Co., 2004 U.S. Dist. LEXIS 5301 (E.D. Pa. 2004) at *10.

The pertinent caselaw, however, makes clear that agreements pleaded by the Plaintiff in its Complaint are outside the scope of the CISG because they neither cover the sale of specific goods nor contain definite terms for quantity and price. In Viva Vino Import Corp. v. Farnese Vini S.r.l., 2000 U.S. Dist. LEXIS 12347 (E.D. Pa. 2000), a breach of contract and tort action brought by a Pennsylvania corporation against an Italian corporation, the Court rejected plaintiff's contention that the CISG applied to a dispute arising from a wine distribution agreement:

> "This Court agrees with the rationale adopted by the court in Kaminski and concludes that the CISG does not apply to distributorship contracts that do not cover the sale of specific goods and contain definite terms regarding quantity and price. Because the agreements at issue in this case do not cover the sale of specific goods and set forth definite terms regarding quantity and price, the CISG is inapplicable."

2000 U.S. Dist. LEXIS 12347 at *4.

Similarly, in Helen Kaminski PTY. Ltd. v. Marketing Australian Prods., 1997 U.S. Dist. LEXIS 10630 (S.D.N.Y. 1997), the District Court held that a distributor agreement stood outside the CISG because the agreement in question failed to identify that particular goods were being sold at a particular price. "The Distributor Agreement requires [defendant] to purchase a minimum quantity of total goods, but does not identify the goods to be sold by type, date or price. In contrast, the CISG requires an enforceable contract to have definite terms regarding quantity and price." 1997 U.S. Dist. LEXIS 10630 at *7. No such terms are present in any of the "agreements" enumerated by Plaintiff in its Complaint, and hence these agreements do not constitute contracts for the sale of goods under the CISG.

Thus, in Amco Ukrservice, the Court recently rejected the contention that the CISG applied to an agreement lacking price and sales terms. Citing Viva Vino Import and Helen Kaminski, the Court stated: "We therefore join the other courts that have examined this issue and conclude that although the CISG may have governed discrete contracts for the sale of goods that the parties had entered pursuant to the joint venture agreements, it does not apply to the agreements themselves." Id. at *13.

In light of the interpretations of the CISG contained in the trilogy of Helen Kaminski, Viva Vino Import, and Amco Ukrservice, and the absence of any terms of sale, price, and quantity in the agreements pleaded by Genpharm, whatever agreements were reached between Aliapharm and Pliva-Lachema, no agreements existed between Genpharm and either of the Defendants for the sale of goods. Simply stated, the writings referred to in the Complaint are not governed by the CISG, and thus do not confer subject matter jurisdiction upon the Court. Accordingly, this action should be dismissed in its entirety.

**POINT II**

**ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED ON THE GROUNDS OF *FORUM NON CONVENIENS***

Should the Court determine that both subject matter and personal jurisdiction are present, the Court should nonetheless dismiss this action on the grounds of *forum non conveniens*. This Court has no substantive interest in continuing to entertain an action such as this where none of the parties are domestic corporations, none of these parties maintain American offices, none of the seminal events pleaded by Genpharm occurred within the United States, and none of the witnesses are located in the United States.

As this Court recently stated in Alnwick v. European Micro Holdings, Inc., 281 F.Supp.2d 629 (E.D.N.Y. 2003):

> The Second Circuit has established a "sliding scale" approach to determine the proper deference to accord a plaintiff's choice of forum. Id. at 71. Under that scale, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States . . . [the greater deference must be accorded plaintiff's choice of a forum and] the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." Id. at 72.

281 F.Supp.2d at 647.

However, "we are also instructed that the choice of a United States forum by a foreign plaintiff is entitled to less deference. *Piper,* 454 U.S. at 255-56, 102 S.Ct. 252 ('The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. When the plaintiff is foreign, ... [the] assumption [favoring the plaintiff's choice of forum] is much less reasonable.)." Iragorri v. United Technologies Corp., 274 F.3d 65, 71 (2d Cir. 2001). Under this test, the choice of forum made by a Canadian corporate plaintiff whose principal

office is located outside the United States is entitled to little deference. See, Carey v. Bayerische Hypo-Und Vereinsbank AG, 2004 U.S. App. LEXIS 10634 (2d Cir. June 1, 2004).

In weighing a forum non conveniens motion, the Court also is directed to weigh the availability an alternative foreign forum, and whether defendants are amenable to process in that forum. Alnwick, 281 F.Supp. at 647. There is no question that the Defendants would be amenable to process in the Czech Republic, and that the Czech Republic is a suitable alternative forum. Calgarth Investments, Ltd. v. Bank Saderat Iran, 1996 U.S. Dist. LEXIS 5562 (S.D.N.Y. Apr. 26, 1996), affirmed without published opinion, 108 F.3d 329 (2d Cir. 1997) (action commenced by Irish corporation against Iranian bank and its local branch dismissed on the grounds of *forum non conveniens* where events occurred in Czech Republic and Czech Republic was a suitable alternative forum).

Alnwick also directs the Court to weigh the private and public interests in retaining jurisdiction. Here, both the private and public interests weigh in favor of dismissal of this action. The documents and witnesses are located abroad. Little discovery has occurred, and Defendants have moved to stay discovery pending a determination of this motion. Further, none of the parties to the action is American, and no overriding public interest is identified in this action. In contrast to Alnwick, this is an action for breach of contract, not a fraud case, and as such public considerations are minimal. Moreover, the plaintiffs and some of the defendants in Alnwick were either American corporations or residents. Here, no one is American.

We respectfully submit that this Court should adopt the holding of Chateau des Charmes Wines Ltd. v. Sabate USA, Inc., 2003 U.S. Dist. LEXIS 20337 (N.D. Cal. Nov. 12, 2003), where the Court, leaving aside the involvement of an American defendant, dismissed an action brought

pursuant to the CISG on *forum non conveniens* grounds. The application of the holding of Chateau des Charmes is more compelling here, where all of the parties are foreign corporations.

## CONCLUSION

Given the totality of the facts, we respectfully ask that Defendants' Motion for dismissal should be granted in its entirety.

Dated: New York, New York
June 21, 2004

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

By: ______________________
Bernard Beitel (BB 8432)
Of Counsel
230 Park Avenue
New York, New York 10169
Tel. No.: (212) 661-9100
Attorneys for Defendants

Of Counsel: Lloyd M. Green